Christopher Brennan (CB-1585)
ZIEGLER, ZIEGLER & ASSOCIATES, LLP
570 Lexington Avenue, 44th Floor
New York, New York 10022
(212) 319-7600

ORIGINAL

IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

FEB 06 2006

★BROOKLYN OFFICE★

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

PASCALE LEGAGNEUR,

                Plaintiff,

      -against-

MEDICAL DEPOT, INC.
d/b/a DRIVE MEDICAL DESIGN
and MANUFACTURING,
RICHARD S. KOLODNY,
HARVEY P. DIAMOND,
JEFFREY SCHWARTZ
and DOUGLAS C. FRANCIS,

                Defendants.

-----------------------------------------------------------X

**06**v.—( **0518**

**COMPLAINT**

**HURLEY, J.**

**JURY TRIAL** ORENSTEIN, M.J.
**DEMANDED**

        Plaintiff, Pascale Legagneur, by and through her attorneys Ziegler, Ziegler

& Associates, LLP, as and for her complaint against defendants Medical Depot, Inc. d/b/a

Drive Medical Design and Manufacturing ("Drive), Richard S. Kolodny (" Defendant

Kolodny"), Harvey P. Diamond ("Defendant Diamond"), Jeffrey Schwartz ("Defendant

Schwartz") and Douglas C. Francis (" Defendant Francis") (two or more together

"Defendants"), alleges on knowledge as to her own acts and otherwise upon information

and belief as follows:

## NATURE OF CASE

1.      Within weeks of the commencement of her employment at Drive in July 2004, Plaintiff, then   a 26 year African American woman, began to be subjected to both sexual harassment and  a sexually hostile work environment.  Plaintiff, executive assistant to Drive general counsel Defendant Kolodny:

- was repeatedly exposed to pornographic and demeaning images of women;

- was forced to listen to sexually explicit and inappropriate conversations involving Defendants, all top executives at Drive;

- was forced to participate in a cover up of sexual harassment committed by Defendant Diamond, Drive's President and Chief Executive Officer;

- was forced to facilitate the distribution of pornographic material among Defendants, Drive's top executives;

- was forced to endure inappropriate personal questions from her direct supervisor, Defendant Kolodny;

- was forced to listen to Defendant Kolodny regularly comment on her weight and bodily figure and

- was forced to perform her job responsibilities while defendant Kolodny stood in close proximity to her and touched his genitals.

2.      Defendants' conduct, as described in detail herein, subjected Plaintiff to sexual harassment and a sexually hostile work environment.  The conduct is particularly outrageous because Defendants comprise Drive's top executive officers including Diamond, Drive's President and CEO and Defendant Kolodny, Drive's general counsel.

2

Defendant Kolodny's conduct is particularly egregious because he was Plaintiff's direct supervisor and general counsel of Drive.  As a lawyer and a member of the Bar of the State of New York, Defendant Kolodny not only knew or should have known his conduct was illegal but had a duty to Drive to prevent such conduct.

3.      When Plaintiff complained to Defendant Kolodny -- her immediate supervisor and Drive's general counsel -- concerning Defendants' improper conduct, he ignored her.  When Plaintiff suffered additional acts of employment discrimination and renewed her complaints about Defendants' conduct, Defendants retaliated.  Indeed, Defendants fired Plaintiff from her position at Drive on June 17, 2005, less than 24 hours the United States Equal Employment Opportunity Commission ("EEOC") informed Drive that Plaintiff had filed a charge of employment discrimination.

4.      As a result of Defendants' outrageous and illegal conduct, Plaintiff has filed this sexual harassment and hostile work environment lawsuit against Defendants under the Civil Rights Act of 1964, as amended §§ 2000e et seq. ("Title VII") and the New York State Human Rights Law, N.Y. Executive Law §§ 290 et seq. ("State HRL").

## PARTIES

5.      Plaintiff Pascale Legagneur is a 27 year old African American female. Ms. Legagneur resides in Nassau County, New York and she is a United States citizen.

6.      Drive is a Delaware corporation with its headquarters located in Nassau County, New York.  Drive is in the business of distributing medical supplies and employs in excess of 100 people.

3

7.     Defendant Kolodny was at all times relevant to this complaint Drive's general counsel, chief financial officer and an executive vice president of Drive. Defendant Kolodny is a resident of the State of New York.

8.     Defendant Diamond was at all times relevant to this complaint Drive's chief executive officer and president. Defendant Diamond is a resident of the State of New York.

9.     Defendant Schwartz was at all times relevant to this complaint an executive vice president of Drive. Defendant Schwartz is a resident of the State of New York.

10.     Defendant Francis was at all times relevant to this complaint an executive vice president of Drive. Defendant Francis is a resident of the State of New York.

**JURISDICTION**

11.     This Court has subject matter jurisdiction over the Title VII claim under 28 U.S.C. §§ 1331 and 1343 because it arises under the laws of the United States and is brought to recover damages for deprivation of equal rights. This Court has supplemental subject matter jurisdiction over the State HRL claim under 28 U.S.C. § 1367 because such claim arises out of the same set of operative facts with the federal claim and is so related to the federal claim that it forms part of the same case or controversy under Article III of the United States Constitution.

12.     Ms. Legagneur has complied fully with any and all prerequisites to jurisdiction in this Court under both Title VII and the State HRL including obtaining a "Notice of Right to Sue" letter from the EEOC on or about November 14, 2005.

4

## VENUE

13.     Venue is proper in this judicial district because Defendants have offices, conduct business and can be found in this district.

## FACTS RELEVANT TO ALL CLAIMS

### Plaintiff's Hiring and Job Responsibilities at Drive

14.     A staffing firm forwarded Plaintiff's resume to Drive in or about July 2004 in response to Drive's notice that they were seeking an executive assistant for Drive's general counsel.

15.     Plaintiff was called into Drive for a job interview in July 2004 and was interviewed by Defendant Kolodny for the position of his executive assistant.

16.     In July 2004 Drive offered Plaintiff the position of executive assistant to Defendant Kolodny.

17.     Plaintiff accepted the position of executive assistant to Defendant Kolodny in July 2004 and Plaintiff's first day of work at Drive was July 19, 2004.

18.     Beginning on July 19, 2004, as part of Plaintiff's job duties as executive assistant to Defendant Kolodny, Plaintiff was required to receive and review all electronic mail ("e-mail") messages received by Defendant Kolodny.

19.     Defendant Kolodny specifically authorized Plaintiff's receipt and review of all his e-mail messages beginning on July 19, 2004 and to facilitate Plaintiff's ability to receive and review of Defendant Kolodny's e-mails, Drive's computer network would automatically forward each e-mail addressed to Defendant Kolodny to Plaintiff's computer terminal.

5

20.     When Defendant Kolodny's e-mail was forwarded to Plaintiff's computer by Drive's computer network, such e-mail would be received in the same manner that any other e-mail was received by Plaintiff at her computer terminal.

21.     In addition to receiving and reviewing each of Defendant Kolodny's e-mails, it was Defendant Kolodny's regular practice to orally dictate any response he wished to make to an e-mail and have Plaintiff type such response at her computer terminal. In order to orally dictate a response to an e-mail or to orally dictate any other type of correspondence, it was Defendant Kolodny's regular practice to stand close to Plaintiff while Plaintiff was seated at her work station.

22.     When Plaintiff would type and send a response to an e-mail on behalf of Defendant Kolodny, such e-mail response would be generated from Plaintiff's computer in the same manner as any other e-mail Plaintiff sent. This meant that e-mail responses sent on behalf of Defendant Kolodny by Plaintiff would indicate that the sender of the response was Plaintiff and not Defendant Kolodny.

23.     As part of her job duties, Plaintiff was required to type and send e-mail responses for Defendant Kolodny and forward such e-mail responses to other members of Drive's staff including Defendant Diamond, Defendant Schwartz and Defendant Francis.

24.     Plaintiff regularly sent e-mail to Defendant Diamond, Defendant Schwartz and Defendant Francis on behalf of Defendant Kolodny. Defendant Diamond, Defendant Schwartz and Defendant Francis regularly sent e-mail to Plaintiff that was intended for Defendant Kolodny.

6

**Plaintiff Begins to Experience Sexual Harassment at Drive**

25.     In August 2004 Defendant Kolodny was standing at Plaintiff's work
station and observed that Plaintiff received a "spam" e-mail advertisement for Viagra, a
well known medication for the treatment of erectile dysfunction.  Immediately after
viewing the e-mail advertising Viagra on Plaintiff's computer, Defendant Kolodny began
to talk to Plaintiff and another Drive employee who was present about the sex life of
Defendant Schwartz and his experience with Viagra.  Defendant Kolodny stated that
Defendant Schwartz had told Drive executives that he tried Viagra and that he had a
"hard on" that lasted throughout the next morning.  Defendant Kolodny stated to Plaintiff
and the other Drive employee that he did not use Viagra because he was "well hung".

26.     In August 2004 Plaintiff observed Defendant Kolodny and another Drive
executive watching a female Drive employee walking past Plaintiff's work area and
Plaintiff heard Defendant Kolodny state that Drive is a "great place to work because of
all the pretty women".

27.     In or about August or September 2004 Defendant Kolodny was having a
conversation with Drive's then Sales Director Michele Murphy.  Said conversation took
place in close proximity to Plaintiff's work station.  After concluding the conversation,
and after Ms. Murphy left the area, Defendant Kolodny commented to Plaintiff about Ms.
Murphy's breasts asking Plaintiff whether Ms. Murphy's breasts were real.

28.     On September 2, 2004 Defendant Kolodny sent an e-mail to Plaintiff
through Drive's computer system entitled "August is Breast Appreciation Month".  Such
e-mail contained explicit pornographic images of women posing in various positions.

7

Defendant Kolodny never informed Plaintiff as to why he had sent her the pornographic "August is Breast Appreciation Month" e-mail. (Exhibit A)

## Plaintiff Is Forced to Participate in a Cover Up of Sexual Harassment at Drive

29.     On October 14, 2004 Plaintiff received an e-mail from Drive's former Director of Retail Sales, Teresa Taylor. Ms. Taylor's e-mail was directed to Defendant Kolodny and, like all e-mails directed to Defendant Kolodny, Plaintiff received such e-mail. Ms. Taylor's e-mail concerned her termination by Drive from her position as Director of Retail Sales. In her e-mail Ms. Taylor stated "I am offended at how this deal was handled and that equal opportunity for woman does not appear to exist in your company".

30.     On October 14, 2004, after Defendant Diamond learned of the contents of Ms. Taylor's e-mail, Defendant Diamond, whose first name is Harvey, ordered Plaintiff to type an e-mail response to Ms. Taylor stating "Teresa, Only ugly women can't succeed at Drive.... Harvey" (Exhibit B)

31.     Ms. Taylor responded by e-mail to Defendant Diamond's "Only ugly women can't succeed at Drive" e-mail by stating that she had sent Defendant Diamond's e-mail to certain Drive customers theretofore serviced by her for their information and that Defendant Diamond's e-mail demonstrated what kind of individual Defendant Diamond was and that "a lawsuit was pending". (See, Exhibit B )

32.     After learning about the contents of Ms. Taylor's response to his e-mail, including her statement that she had told customers about the e-mail and to begin a lawsuit against Drive, Defendant Diamond tried to suggest to Plaintiff that his direction to send the e-mail to Ms. Taylor was a "joke" and that Plaintiff should not have sent out

8

the e-mail. In addition, Defendant Diamond began speaking about a "cover-up story" to explain why the e-mail was sent. Defendant Diamond's proposed cover-up stories included telling Ms. Taylor that the e-mail was a computer virus that did not come from Defendant Diamond.

33.     On October 15, 2004, Plaintiff was called into a meeting with Defendant Diamond and Defendant Kolodny. In the meeting, Defendant Diamond ordered Plaintiff to inform Ms. Taylor that the e-mail stating "Only ugly women can't succeed at Drive" was not an e-mail from Defendant Diamond and that such e-mail was sent in error.

34.     Also during the October 15, 2004 meeting Plaintiff was reprimanded by Defendant Diamond and Defendant Kolodny for discussing Defendant Diamond's order to send the "Only ugly women can't succeed at Drive" with fellow employees. Plaintiff was ordered to write a letter to Defendant Diamond indicating that she understood Drive's confidentiality policy and that she had "violated" Drive's trust in her.

35.     In fear of losing her job, Plaintiff followed Defendant Diamond's and Defendant Kolodny's orders regarding communicating to Ms. Taylor that Defendant Diamond was not responsible for the "Only ugly women can't succeed at Drive" e-mail and in composing a letter to Defendant Diamond about Drive's confidentiality policy.

## Plaintiff Experiences Further Sexual Harassment by Defendants, Including Further Receipt of Pornographic E-mails

36.     In or about October 2004 Plaintiff learned that certain Drive executives were involved in sexual relationships with female employees of Drive and that these sexual relationships had been publicly exposed during an industry tradeshow. On or about November 2, 2004 Defendant Kolodny was conducting a conversation with his

9

wife via speakerphone while Plaintiff was sitting at her work station. Plaintiff's work station was located immediately outside Defendant Kolodny's office. During the conversation Defendant Kolodny began to speak about the events of the aforementioned tradeshow and repeatedly stated to his wife that Drive had "a bunch of whores working here".

## Plaintiff's First Complaint Concerning Sexual Harassment

37.    On November 11, 2004 Plaintiff received an e-mail for Defendant Kolodny from a business associate of Defendant Kolodny named Stewart Rahr. Plaintiff was aware that Mr. Rahr was involved in various business dealings with Drive. As per her job responsibilities Plaintiff opened the e-mail from Mr. Rahr.

38.    The subject line of Mr. Rahr's November 11, 2004 e-mail stated "Sunsets-Your Vote Counts" ("Sunsets e-mail"). The Sunsets e-mail contained three photos and requested that the viewer chose which "fine work of art" they liked best. The first two of the three photos were pictures of sunsets and the third photo was a picture of a woman on her knees performing oral sex on a man. (Exhibit C)

39.    Immediately after receiving the Sunsets e-mail, Plaintiff went to Defendant Kolodny and complained that she found its contents offensive.

40.    Following Plaintiff's complaint, Defendant Kolodny viewed the Sunsets e-mail in Plaintiff's presence and laughed. After laughing at the content of the Sunsets e-mail, Defendant Kolodny ordered Plaintiff to forward the Sunset e-mail to Defendant Diamond and Defendant Schwartz with the message "Dear Jeff and Harvey, This is from "The Stewart". Check this out.... He's wacked! Rich". (See Exhibit C)

10

41.    Prior to forwarding the Sunsets e-mail, as per Defendant Kolodny's order,
Plaintiff informed Defendant Kolodny that she did not want to forward the e-mail.
Plaintiff reminded Defendant Kolodny of the Defendant Diamond's admonition to her
during the October 15, 2004 meeting following the e-mail to Teresa Taylor that Plaintiff
should "never send stuff like that to anyone".

42.    Despite Plaintiff's protest about the content of the Sunsets e-mail and her
protest at being required to forward such e-mail to Defendant Diamond and Defendant
Schwartz, Defendant Kolodny insisted that the email be forwarded and told Plaintiff
"Don't worry about it. Just send it out".

43.    From October 2004 and to in or about February 2005, Defendant Kolodny
repeatedly made inappropriate comments and asked inappropriate questions about
Plaintiff's body shape and/or Plaintiff's figure. Defendant Kolodny's inappropriate
comments and questions included but were not limited to repeatedly stating and/or
suggesting that Plaintiff needed to lose weight, stating that Plaintiff's existing weight was
"unacceptable", discussing whether Plaintiff was on a diet while on a speaker phone with
Mrs. Kolodny, in close proximity to Plaintiff's work station and continually asking
Plaintiff if she was going to the gym.

44.    Throughout Plaintiff's tenure as Defendant Kolodny's executive assistant,
Defendant Kolodny asked Plaintiff inappropriate questions about her personal life,
including, but not limited to, questions concerning whom Plaintiff lived with, questions
about Plaintiff's marital status, questions about Plaintiff's plans for after work and plans
for her weekends, questions about Plaintiff's personal financial status and questions
concerning whether Plaintiff wanted to have children.

11

45.     Throughout Plaintiff's tenure as Defendant Kolodny's executive assistant, Defendant Kolodny would stand close to Plaintiff while he was in the process of dictating letters, e-mails and other documents and while standing close to Plaintiff he would scratch and touch his genitals.

46.     On December 13, 2004 Plaintiff received an e-mail from a business associate of Defendant Kolodny named Mitchell S. Berkey. When Plaintiff opened the e-mail as part of her job duties, she found that the e-mail was a photo of a large penis made of snow that was ejaculating "sperm" in the form of snowballs. Defendant Kolodny viewed Mr. Berkey's e-mail at Plaintiff's desk and laughed loudly at its content. (Exhibit D)

47.     On January 17, 2005 Defendant Kolodny began to talk to Plaintiff about the film "Meet the Fockers". During this conversation with Plaintiff, Defendant Kolodny stated to Plaintiff he had been "fockerized in other ways" over the past weekend and he stated to Plaintiff "I'm gonna fockerize you".

48.     On January 19, 2005 Plaintiff received an e-mail from Defendant Diamond that was entitled "Fw: Only for a good friend". When Plaintiff opened the e-mail as part of her job duties, she discovered that the e-mail contained four photos of an obese woman wearing only her underwear and posing in various sexual positions. (Exhibit E)

49.     On January 27, 2005 Plaintiff received an e-mail from Defendant Francis entitled "Fw: Some Golf Instructions for your Wife" ("Golf e-mail"). Defendant Francis forwarded the Golf e-mail to Defendant Kolodny, Defendant Schwartz and Defendant

12

Diamond. When Plaintiff opened the Golf e-mail as part of her job duties she found that it contained a pornographic film clip of a naked woman fondling her breasts. (Exhibit F)

50.     On January 28, 2005 Plaintiff received an e-mail from Defendant Francis entitled "Fw: This just has to hurt!!!!". When Plaintiff opened the e-mail as part of her job duties, she found that it contained a film clip of a naked woman with large breasts doing jumping jacks on a beach. (Exhibit G)

51.     On January 31, 2005 Defendant Kolodny e-mailed the comment "Awesome" to Defendant Francis in response to Defendant Francis' January 28, 2005 "Fw: This just has to hurt!!!!" e-mail. (Exhibit H)

52.     In or about February or March 2005 Defendant Diamond and Defendant Kolodny were conversing via speakerphone concerning Susan Howard, the principal and CEO of Michael Graves Design Group, a company that was involved in a business relationship with Drive. Plaintiff could hear the conversation concerning Ms. Howard from her work station and Plaintiff heard Defendant Diamond repeatedly refer to Ms. Howard as a "bitch".

53.     On February 2, 2005 Plaintiff received an e-mail from Defendant Francis entitled, "Fw: the perfect woman". When Plaintiff opened the e-mail as part of her job duties, she found that it contained a photo of a naked woman with a caption next to the photo reading "The Perfect Woman...with the Perfect Attitude" and a list of attributes of a "perfect woman". These attributes included but were not limited to swallowing male ejaculate, engaging in lesbian sex, engaging in anal sex, engaging in group sex and viewing pornography. (Exhibit I).

13

54.     On February 2, 2005 Defendant Kolodny e-mailed Defendant Francis the comment "Truly outstanding!!!!" in response to "The Perfect Woman...with the Perfect Attitude" e-mail. (Exhibit J)

55.     On February 4, 2005 Plaintiff received an e-mail from Defendant Francis entitled "McDonald's has a new sandwich" (the McDonald's e-mail). Defendant Francis forwarded the McDonald's e-mail to both Defendant Kolodny and Defendant Diamond. When Plaintiff opened the McDonald's e-mail as part of her job duties, she discovered that it contained a photo of a naked obese woman with a large sandwich coming out of her anus. On February 4, 2005 Defendant Kolodny e-mailed the comment "Tasty???" to Defendant Francis' in response to the McDonald's e-mail. (Exhibit K)

56.     On March 14, 2005 Plaintiff received an e-mail from Defendant Schwartz entitled "[Fwd: Fw: XXX] open in private". When Plaintiff opened the e-mail as part of her job duties she found that it contained six pornographic images of a young woman posing in various sexual positions. (Exhibit L)

### Plaintiff Complains of Sexual Harassment for the Second Time

57.     On March 16, 2005 Plaintiff had a meeting with Defendant Kolodny and complained for the second time about being exposed to pornographic and offensive e-mails and pornographic and offensive images at Drive.

58.     During Plaintiff's March 16, 2005 meeting with Defendant Kolodny, Defendant Kolodny told Plaintiff that her work performance was excellent and that Plaintiff was "the best and brightest" assistant he had ever had.

59.     On March 23, 2005 during a meeting with Defendant Diamond and Defendant Kolodny, Defendant Diamond told Plaintiff that "porn is all over the world",

14

that Defendant Kolodny's order that she forward the pornographic Sunsets e-mail to Defendant Diamond did not matter and that Defendant Diamond did not intend to prevent Mr. Rahr, the original sender of the Sunsets e-mail, from sending pornographic e-mails to Drive in the future because he was a "big customer" of Drive.

60.     Also during Plaintiff's March 23, 2005 meeting with Defendant Diamond and Defendant Kolodny, Defendant Kolodny informed Plaintiff that there was "something wrong with her attitude". Plaintiff was shocked at Defendant Kolodny's reference to a problem with her attitude because less than a week earlier Defendant Kolodny had given Plaintiff an exemplary evaluation of her work performance and had described Plaintiff as "the best and brightest" assistant he had ever had.

61.     A few hours after Plaintiff's March 23, 2005 meeting with Defendant Diamond and Defendant Kolodny, Plaintiff had a meeting with George Suarez, Drive's director of human resources. Plaintiff informed Mr. Suarez during the March 23, 2005 meeting that (1) she initially complained to Defendant Kolodny about receiving pornographic e-mail on November 11, 2004 and that Defendant Kolodny ignored her complaint, (2) that the vast amount of pornographic e-mail that she received was e-mail that had been sent between Defendant Diamond, Defendant Kolodny, Defendant Schwartz and Defendant Francis and (3) that the pornographic e-mail that had been sent between Defendant Diamond, Defendant Kolodny, Defendant Schwartz and Defendant Francis contained not only offensive images of women but also contained degrading statements about women. Mr. Suarez assured Plaintiff that he would investigate Plaintiff's complaint of sexual harassment and her complaint that Drive maintained a work environment that was hostile to women.

15

## Plaintiff Suffers Retaliation for Complaining About Sexual Harassment

62.     Following Plaintiff's second complaint that she was sexually harassed and
that Drive encouraged, supported and maintained a hostile work environment for its
female employees, Defendant Kolodny and Drive began to retaliate against Plaintiff by
significantly altering her job duties.

63.     Defendant Kolodny and Drive's retaliation against Plaintiff included, but
was not limited to, failing to assign Plaintiff new work assignments, removing existing
work assignments from Plaintiff, relentlessly and unjustly criticizing Plaintiff's work
performance, openly discussing Plaintiff's claim of sexual harassment in the presence of
Plaintiff and other Drive employees and referring to Plaintiff's claim as "ridiculous" and
"a waste of time", restricting Plaintiff's access to Drive's computer system and
fabricating allegations against Plaintiff concerning the quality of her work performance.

64.     On April 21, 2005 Plaintiff received a letter from Mr. Suarez that stated
that Plaintiff had been insubordinate and that because Plaintiff was an "at will" employee
Drive was permitted to terminate her at any time. The April 21, 2005 letter went on to
state that instead of immediately terminating Plaintiff; Plaintiff was being given a
"warning".

65.     On May 23, 2005 Plaintiff filed a charge of employment discrimination
against Drive with the United States Equal Employment Opportunity Commission.

66.     On June 3, 2005 Plaintiff was called into a meeting with Defendant
Kolodny, Mr. Suarez and Drive's controller. Defendant Kolodny told Plaintiff during the
June 3, 2005 meeting that Plaintiff "had a chip on her shoulder", that Plaintiff "was
unhappy working" at Drive and that Plaintiff had a "terrible" attitude.

16

67.     Defendant Kolodny further informed Plaintiff during the June 3, 2005

meeting that Plaintiff had until 3 pm on June 3, 2005 to sign a general release in favor of

Drive in order to receive a "severance package" that consisted of approximately $800.00.

Defendant Kolodny told Plaintiff that if she failed to sign the general release in favor of

Drive, Plaintiff had two weeks to "dramatically improve" her attitude and show more

initiative or she would be let go from Drive "without a cent". Plaintiff requested that

Defendant Kolodny provide her with suggestions as to how she could improve her work

performance and show greater initiative, Defendant Kolodny refused to provide Plaintiff

with any suggestions.

68.     On June 3, 2005 at approximately 1:15 pm Defendant Kolodny handed

Plaintiff a copy of a document entitled "Separation Agreement and General Release" and

stated to Plaintiff that he "could have a check ready for her today". Plaintiff reviewed the

Separation Agreement and General Release document presented to her by Defendant and

realized that the document required Plaintiff to release all claims of sexual and workplace

harassment against Drive.

69.     Plaintiff informed Defendant Kolodny via e-mail on June 3, 2005 that she

did not intend to sign the proposed Separation Agreement and General Release.

70.     Defendant Kolodny was and is an attorney admitted to practice law in the

State of New York. On March 23, 2005 Ziegler, Ziegler & Associates, LLP informed

Drive that Plaintiff was its client in connection with her complaints of sexual harassment.

71.     Despite Defendant Kolodny's knowledge that Plaintiff was represented by

Ziegler, Ziegler & Associates, LLP, Defendant Kolodny attempted to have Plaintiff

compromise her claims against him and Drive without communicating with Plaintiff's

17

counsel. In so doing, Defendant Kolodny violated the Code of Professional
Responsibility applicable to all attorneys admitted to practice in the State of New York.

72.    After the June 3, 2005 meeting, in an effort to demonstrate to Defendant
Kolodny that she was showing greater initiative in her work, Plaintiff began e-mailing
Defendant Kolodny to request work assignments. Despite Defendant Kolodny receiving
Plaintiff's requests for work assignments, he continued his retaliatory practice of ignoring
Plaintiff's request for work assignments, which practice began after receiving Plaintiff's
second complaint of sexual harassment in March 2005.

73.    On June 13, 2005 Plaintiff was again called into a meeting with Defendant
Kolodny, Mr. Suarez and Drive's controller. Defendant Kolodny informed Plaintiff
during the meeting that she was "harassing" him by sending e-mails requesting work
assignments. Plaintiff told Defendant Kolodny that her e-mails requesting work
assignments were an effort to follow his directive to show more initiative.

74.    On June 16, 2005 Drive, for the first time, was contacted by the United
States Equal Employment Opportunity Commission and informed that Plaintiff had filed
a charge of employment discrimination against Drive.

75.    On June 17, 2005 at approximately 11:00 am Plaintiff was summoned to a
meeting with Defendant Diamond and Defendant Schwartz. At the meeting Defendant
Diamond told plaintiff that she was fired and that she should gather her belongings and
leave the building immediately.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT DRIVE
### (Violation of Title VII)

76.     Plaintiff repeats and realleges paragraphs 1-75 as if fully set forth herein.

77.     By the acts and practices described above, including but not limited to creating a hostile work environment for plaintiff because of her sex and ignoring plaintiff's complaints of discrimination, Defendant Drive discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex in violation of Title VII.

78.     Defendant Drive is liable as an "employer" pursuant to Title VII.

79.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of Defendant Drive's discriminatory conduct.

80.     Defendant Drive's discriminatory conduct towards Plaintiff constitutes a malicious, willful and reckless violation of Plaintiff's rights under Title VII.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT DRIVE
### (Violation of Title VII-Retaliation)

81.     Plaintiff repeats and realleges paragraphs 1-80 as if fully set forth herein.

82.     By the acts and practices described above, including but not limited to materially altering the conditions of Plaintiff's employment and terminating Plaintiff's

19

employment, Defendant Drive retaliated against Plaintiff for Plaintiff reporting and opposing the unlawful employment practices of Defendant Drive.

83.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of Defendant Drive's retaliatory conduct.

84.     Defendant Drive's retaliatory conduct towards Plaintiff constitutes a malicious, willful and reckless violation of Plaintiff's rights under Title VII.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (Violation of State HRL)

85.     Plaintiff repeats and realleges paragraphs 1-84 as if fully set forth herein.

86.     By the acts and practices described above, including but not limited to creating a hostile work environment for plaintiff because of her sex and ignoring plaintiff's complaints of discrimination, Defendants discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex in violation of the State HRL.

87.     Defendant Drive is liable to Plaintiff as an "employer" pursuant to the State HRL.

88.     Defendant Kolodny, Defendant Diamond, Defendant Schwartz and Defendant Francis are liable to Plaintiff as aiders and abettors of the discrimination against plaintiff under the State HRL.

89.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of Defendant Drive's discriminatory conduct.

20

90.     Defendant Drive's discriminatory conduct towards Plaintiff constitutes a

malicious, willful and reckless violation of Plaintiff's rights under the State HRL.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
#### (Violation of State HRL-Retaliation)

91. Plaintiff repeats and realleges paragraphs 1-90 as if fully set forth herein.

92.     By the acts and practices described above, including but not limited to

materially altering the conditions of Plaintiff's employment and terminating Plaintiff's

employment, Defendants retaliated against Plaintiff for Plaintiff reporting and opposing

the unlawful employment practices of Defendant Drive.

93.     Plaintiff is now suffering and will continue to suffer irreparable injury and

monetary damages and damages for mental anguish and humiliation as a result of

Defendants' retaliatory conduct.

94.     Defendant Drive is liable to Plaintiff for its retaliation against her as an

"employer" pursuant to the State HRL.

95.     Defendant Kolodny, Defendant Diamond, Defendant Schwartz and

Defendant Francis are liable to Plaintiff for their retaliation as aiders and abettors of such

retaliation under the State HRL.

96.     Plaintiff is now suffering and will continue to suffer irreparable injury and

monetary damages and damages for mental anguish and humiliation as a result of

Defendants' retaliatory conduct.

97.     Defendants' retaliatory conduct towards Plaintiff constitutes a malicious,

willful and reckless violation of Plaintiff's rights under the State HRL.

21

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff respectfully requests that this Court enter an award:

    (a)    declaring the acts and practices complained of herein are a violation of Title VII and the State HRL;

    (b)    enjoining and permanently restraining these violations of Title VII and the State HRL;

    (c)    directing Defendants to take such affirmative action as is necessary to ensure that these unlawful employment actions are eliminated;

    (d)    directing Defendants to make Plaintiff whole by providing her with back pay, reinstatement or front pay in lieu thereof, and compensation for all lost or diminished employment-related compensation or benefits past or future;

    (e)    directing Defendants to pay Plaintiff compensatory damages in an amount not less than $10,000,000 for injury to her reputation, for adverse effects on her career, and for diminished earning capacity resulting from the discriminatory and retaliatory actions of Defendants';

    (f)    directing that Defendants pay Plaintiff punitive damages in an amount not less than $20,000,000;

    (g)    directing Defendants to pay an additional amount to compensate plaintiff for the emotional stress Defendants' unlawful conduct has caused Plaintiff;

22

(h)     award Plaintiff pre-judgment interest on all monies awarded

to her;

(i)     award Plaintiff her reasonable attorneys' fees and costs as

provided in Title VII; and

(j)     granting such other and further relief as the Court deems

necessary and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all claims.

Dated: New York, New York
       January 30, 2006

ZIEGLER, ZIEGLER & ASSOCIATES, LLP

By: _____
     Christopher Brennan (CB 1585)

Attorneys for Plaintiff
570 Lexington Avenue, 44th Floor
New York, New York 10022
(212) 319-7600

# EXHIBIT(S)

# VIEWABLE

# IN CLERK'S OFFICE